UNITED STATES *v.* FREDERICK WARNE & Co. (No. 3358)[1]

[1] T. D. 44638

United States Court of Customs and Patent Appeals, January 28, 1931

*Charles D. Lawrence*, Assistant Attorney General (*Lyman Ward*, special attorney, of counsel), for the United States.

*Curie, Lane & Wallace* (*Samuel Isenschmid* of counsel) for appellee.

[Oral argument December 12, 1930, by Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal by the United States from a judgment of the United States Customs Court which sustained protests against the assessment of duty at 25 per centum ad valorem under paragraph 1310 of the Tariff Act of 1922 on certain paper-covered books, in the English language, of *bona fide* foreign authorship, and held the merchandise dutiable at 15 per centum under the same paragraph.

The books in question were classified under that provision of paragraph 1310 which reads as follows:

* * * Books of paper or other material for children's use, printed lithographically or otherwise, not exceeding in weight twenty-four ounces each, with more reading matter than, letters, numerals, or descriptive words, 25 per centum ad valorem.

The importer, in its protests, claimed classification under that provision of said paragraph 1310 reading as follows:

Unbound books of all kinds, bound books of all kinds, except those bound wholly or in part in leather, sheets or printed pages of books bound wholly or in part in leather, pamphlets, music in books or sheets, and printed matter, all the foregoing not specially provided for, if of bona fide foreign authorship, 15 per centum ad valorem; * * *

The parties upon the trial in the court below entered into a stipulation which, so far as material to the issues before us, reads as follows:

It is stipulated and agreed between counsel, in the matter of the above protests:
* * * * * * *
3. That the books marked, respectively, Exhibits 1 to 16, inclusive, submitted herewith, are representative of the books invoiced as follows, wherever they appear on the invoices, viz:

*Exhibit 1* represents all books invoiced as A. L. Life of Our Lord.

*Exhibit 2* represents all books invoiced as A. L. Bible Stories, or Stories from the Bible.

*Exhibit 3* represents all books invoiced as Bible Tales for Children or Bible Tales.

*Exhibits 1, 2, and 3* also represent all books invoiced as Favorite Instruction Books, Favte. Instruction Books, Fav. Instruction Bks., Fav. Instru. Books, Favourite Instruction No. 3, Playhour, or Playhour Books.

*Exhibit 4* represents all books invoiced as A. L. Fairy Tales, or Fairy Tales.

*Exhibit 5* represents all books invoiced as A. L. Fairy Stories, or Fairy Stories.

*Exhibit 6* represents all books invoiced as K. G. Birthday Book, K. G. Birthday, Kate Greenaway B'day Book, K. Greenaway B'day Book, Greenaway B'day Books, or Gem Birthday Books.

*Exhibit 7* represents all books invoiced as Greenaway Almanack, K. G. Almanac, or K. G. Almanack.

*Exhibit 8* represents all books invoiced as Jumblies.

*Exhibit 9* represents all books invoiced as K. G. Book of Games, or Book of Games.

*Exhibit 10* represents all books invoiced as Little Ann.

*Exhibit 11* represents all books invoiced as Language of Flowers, or Lang. of Flowers.

*Exhibit 12* represents all books invoiced as Magic Fishbone.

*Exhibit 13* represents all books invoiced as Nonsense Songs and Stories.

*Exhibit 14* represents all books invoiced as Pelican Chorus.

*Exhibit 15* represents all books invoiced as Pied Piper.

*Exhibit 16* represents all books invoiced as Robin's Xmas. Eve., or Christmas Eve,

and that all of said books represented by Exhibits 1 to 16, inclusive, are of bona fide foreign authorship and are not bound in leather.

4. That said protests may be deemed to be submitted for decision upon this stipulation and said Exhibits 1 to 16, inclusive.

The stipulation does not cover the weights of the books, but the exhibits before us show that each is less than 24 ounces in weight.

Therefore, the sole question for determination is whether the books here involved are "Books * * * for children's use" within the contemplation of that provision of said paragraph 1310 first quoted herein. If they are not, then the judgment of the lower court should be affirmed.

As the only evidence in the case bearing upon this question consists of samples of the books which are before us, and which we have examined, the case must be decided from such evidence and the law applicable thereto.

The first inquiry is as to the proper construction of the words found in paragraph 1310, "Books of paper or other material for children's use, * * * with more reading matter than letters, numerals, or descriptive words, * * *."

The Government contends that the foregoing includes all books primarily designed and intended solely for the use of children under the age where adolescence or youth begins, and that it at least includes all books "primarily designed and intended solely for the amusement and entertainment of children of kindergarten age or thereabouts."

Appellees, upon the other hand, contend that the language quoted from said paragraph 1310 must be construed in connection with a provision found in paragraph 1414 of said act, which reads as follows: "* * * toy books without reading matter other than letters, numerals, or descriptive words * * *," made dutiable by

said paragraph at 70 per centum ad valorem; that when so construed the books included in said provision of paragraph 1310 are limited to picture books for children, and that story books with pictures merely illustrating the stories are excluded. Appellee's counsel cites in support of this contention the case of *MacMillan Co.* v. *United States*, T. D. 43422, 55 Treas. Dec. 821, decided by the Customs Court, in which the court said:

> If they mean anything at all, the qualifying words "with more reading matter than letters, numerals, or descriptive words" necessarily require that the book shall contain (1) letters, numerals, or descriptive words, and (2) additional reading matter which must predominate. It is also fair to assume that the book should contain pictures, otherwise where would be the need of descriptive words as distinguished from the additional reading matter? And since the provision, save for the requirement of additional reading matter, is phrased in the literal language of the corresponding provision in the toy paragraph, it would seem that the letters, numerals, and descriptive words should be of the class or type ordinarily found in toy books. In other words, the provision in paragraph 1310, we believe, was intended to cover toy books in which the reading matter predominates. Without such reading matter they would be toy books; with such reading matter predominating they are excluded from the toy paragraph and become classifiable under paragraph 1310. This would seem to be the court's interpretation of the congressional purpose as judicially enunciated in *Westermann* v. *United States* (17 C. C. P. A. 75, T. D. 43361). The court said:
>
> > Paragraph 1414 is limited to "toy books *without reading matter* other than letters, numerals, or descriptive words." (Italics ours.) * * * The pictures contained therein are usually accompanied by letters, numerals, or words descriptive thereof. * * * We do not mean to imply that the descriptive words may not be in the form of a sentence; that question is not before us. We are of opinion, however, that books "for children's use," which contain more reading matter than letters, numerals, or words descriptive merely of the objects therein portrayed, are excluded from the provisions of paragraph 1414.

We would first observe that in said case of *Westermann* v. *United States*, 17 C. C. P. A. (Customs) 75, T. D. 43361, the question here under consideration was not involved. There the competing tariff provisions were that provision of paragraph 1310 here under consideration and paragraph 1414. It was conceded that if the books there involved were not dutiable under paragraph 1414 they were dutiable as "books * * * for children's use" under paragraph 1310, and it was held that as the books did contain reading matter other than letters, numerals, or descriptive words, they were dutiable under said paragraph 1310.

We can not concur with the view of the Customs Court expressed in the *MacMillan* case, *supra*, that the provision of paragraph 1310 here under consideration is only applicable to books for children's use which contain letters, numerals, or descriptive words and additional reading matter which must predominate. We think that the words in paragraph 1310, "with more reading matter than letters, numerals, or descriptive words," were inserted for the purpose of excluding from its provisions toy books without reading matter other

than letters, numerals, or descriptive words, because they are provided for in paragraph 1414, and for the purpose of including in said provision of paragraph 1310 all books for children's use not provided for in said paragraph 1414. It will be observed that the language of the provision of paragraph 1414 is "toy books without reading matter *other than* letters, numerals, or descriptive words * * *." (Italics ours.) It is clear that here Congress regarded letters, numerals, or descriptive words as "reading matter," as they are literally, for one reads "letters, numerals, or descriptive words," and by the use of the words "other than" Congress intended that toy books containing letters, numerals, or descriptive words, although constituting reading matter, should not be excluded for that reason, but if the books contained any reading matter not included in the phrase "letters, numerals, or descriptive words," they should be excluded from said paragraph 1414.

When we come to examine the provisions of paragraph 1310 we find the words "more reading matter than letters, numerals, or descriptive words." Here the words "more reading matter than" are susceptible of two constructions, one a construction in a comparative sense, implying that there must be letters, numerals, or descriptive words in the book, and in addition, other reading matter which predominates over letters, numerals, or descriptive words. It was this construction that the Customs Court gave to the provision in the *MacMillan* case, *supra:*

The other construction, which we think is the correct one, is that the words "more reading matter than," as used in the paragraph, mean any reading matter that is not included in the words "letters, numerals, or descriptive words." Standing alone, we think that a comparative construction would be the correct one, but in construing statutes we must endeavor to arrive at the intent of Congress in the use of words, and apply such intent so far as the language of the statute will permit. We think that, in construing this provision, we must read it in connection with paragraph 1414, as this court, in the case of *Westermann* v. *United States, supra,* in construing paragraph 1414, read it in connection with paragraph 1310.

We think it was clearly the intent of Congress to include all books for children's use in the quoted provisions of the two paragraphs, and that, when Congress used the words "more reading matter than" in paragraph 1310, it used the words in the same sense that it used the words "other than" in paragraph 1414, which excludes the construction of the phrase "more reading matter than" in a comparative sense.

In support of this view we call attention to the fact that, under the construction given the provisions of the two paragraphs by the lower court, and contended for by appellee, there would be a class of chil-

dren's books, admittedly for use by very young children and containing letters, numerals, or descriptive words which predominate over other reading matter, that would not be included under either provision and would fall under the 15 per centum bracket of paragraph 1414. To illustrate, a children's book consisting of pictures, and words descriptive of the pictures, might contain short paragraphs of reading matter not consisting of letters, numerals, or descriptive words, but which a child could readily understand, such other reading matter not predominating over letters, numerals, or descriptive words. Under appellee's theory, such a book clearly could not be classified under paragraph 1414 because it was held in the *Westermann* case, *supra*, that the presence of any reading matter other than letters, numerals, or descriptive words excluded it from that paragraph; neither, under such a theory, could it be included under that provision of paragraph 1310 here under consideration because the other reading matter did not predominate over the letters, numerals, or descriptive words. Therefore, under appellee's theory, such a book would be relegated to the 15 per centum provision of said paragraph 1310.

It is inconceivable to us that Congress intended that a toy book for children containing no reading matter other than letters, numerals, or descriptive words should carry a duty of 70 per centum ad valorem, that a book for children's use in which 75 per centum of the reading matter was other than letters, numerals, or descriptive words, the remaining 25 per centum being letters, numerals, or descriptive words, should carry a rate of duty of 25 per centum ad valorem, but that a book in which only 25 per centum of the reading matter was other than letters, numerals, or descriptive words, the remaining 75 per centum being letters, numerals, or descriptive words, should carry a rate of duty of only 15 per centum.

It is clear to us that appellee's theory is not well founded, and that Congress intended that all books for children's use should be included either in said provision of paragraph 1414 or in said provision of paragraph 1310, and in order to carry out such intent the provisions must be construed as we have heretofore indicated.

This leaves for determination the question of whether the books in question are for children's use, as those words are used in said provision of paragraph 1310. We do not think that Congress used the word "children" as meaning all children up to the age when adolescence or youth begins, as contended for by the Government, but intended to include only children of a tender age. We come to this conclusion from the use of the words "letters, numerals, or descriptive words" in paragraph 1310, and we think that a fair description of the children included within the meaning of the word

as used in said provision is that indicated by the Customs Court in the *MacMillan* case, *supra*, wherein the court, speaking of the books there under consideration, said:

* * * By no stretch of the imagination can they be classified as within the same category of such books for children's use as, say, Little Red Riding Hood, Jack and the Beanstalk, Jack the Giant Killer, Three Bears, Mother Goose Rhymes, and similar well-known childish fables which are primarily designed and intended solely for the amusement and entertainment of children of kindergarten age or thereabouts.

We think that books designed to be used by young children, including those who have learned to read stories simply told and easily comprehended, fall within the provision "books * * * for children's use" of said paragraph 1310, and that books designed to be used by those more advanced in learning are excluded.

With this construction of said paragraph 1310 we come to an examination of the books here involved for the purpose of ascertaining which, if any of them, are "books * * * for children's use." There being no other evidence in the case, the determination must rest solely upon an examination of the books themselves.

Exhibits 1 and 2 consist of Bible stories printed in large type, told in such simple language that children, even before learning to read, can understand them when read to them. Exhibit 3 is of the same character, and is entitled "Bible Tales for Children." Exhibits 4 and 5 are books of fairy tales clearly designed for the use of children of tender age. They include "The Story of the Three Little Pigs," "Jack and the Beanstalk," "The Ugly Duckling," etc. Exhibit 6 is entitled "Kate Greenaway's Birthday Book for Children." It is profusely illustrated with pictures of children, including one illustration for each day of the year, and contains very simple verses. A representative verse reads as follows:

Hush-a-bye, Dolly! go to your rest;
Mother wants to be busy, you know.
Dolly, be quiet, I won't have you cry;
To sleep, child, you really must go.

There are blank pages opposite each day for writing in the names of childhood friends.

Exhibit 10 is entitled "Little Ann and Other Poems." It is illustrated in color with pictures of children. The following lines are illustrative of the verses:

"I do not like to go to bed,"
Sleepy little Harry said.

Exhibit 12 is the story of "The Magic Fishbone" by Charles Dickens, with many illustrations of figures of children, some of them in color. It is printed in large type. The book is plainly designed for the use of very young children.

Exhibit 15 is a book containing Browning's "The Pied Piper of Hamlin," profusely illustrated with full pages in color. Whether or not the poem itself may be said to be "for children's use," it is clear from the character of the illustrations that the book as published was designed and intended solely for the use of children.

Exhibit 16 is entitled "The Robin's Christmas Eve"; it is beauti-fully illustrated in color, containing pictures of children, birds and adults illustrating the poem. The poem itself is couched in simple words readily understood by a young child. Upon one of its fly leaves is found the following prefatory note:

The constant request for a reissue of this famous poem for children has induced the publishers to offer this newly illustrated edition.

We hold that Exhibits 1 to 6, inclusive, and Exhibits 10, 12, 15, and 16 are "books * * * for children's use" within the meaning of those words as used in said paragraph 1310, and that the lower court should have overruled the protests in so far as they covered books represented by said exhibits.

Exhibit 7 is an almanack for 1925. It has a page for each month, with phases of the moon at the bottom of each page and children's illustrations. It has illustrations representing the four seasons and poems by Herrick, Shakespeare, Spenser and Fletcher. No young child could be expected to understand these poems, or understand the phases of the moon. The book is clearly designed for those who have acquired a considerable degree of learning, and the understanding of all ordinary words of the English language.

Exhibit 11 is entitled "The Language of Flowers." It contains the names of all well-known and many little-known flowers; opposite each name of a flower is given what purports to be its meaning or significance. It is illustrated in colors. A young child could understand very few of the definitions. It also contains a collection of well-known poems, clearly designed for adult readers and which have been enjoyed by them for many generations.

Exhibit 9 is a book of games. While it contains descriptions of such childish games as "Puss in the Corner," "Marbles" and other games of the same general character, it also contains descriptions of games which no young child could understand or play. To illustrate, we quote the description of one game entitled "Words and Questions":

Each player writes on separate pieces of paper a question and a noun. The papers are then shuffled, and each player draws out a question and a noun; the former he must answer in rhyme, and bring the latter into his answer. Then one player reads aloud all the questions and answers.

Exhibits 8, 13, and 14 consist of "Nonsense" verses, stories and songs by Edward Lear, freely illustrated. Exhibit 8 is entitled "The Jumblies." While it contains such familiar rhymes as "The Owl and the Pussy-Cat," it also contains rhymes such as "Incidents in the life

of my Uncle Arly" and "The Courtship of the Yonghi-Bonghi-Bo," with music for the latter. It contains an introduction from which it is clearly shown that the book is designed for the entertainment of adult readers as well as children.

Exhibit 13 is entitled "Nonsense Songs and Stories." It has a few illustrations and has an introduction by Edward Strachey and a preface, both of which are clearly designed for adult readers. The preface begins with the following:

It is believed that all save the youngest readers of these Nonsense Books will be interested in the two following autobiographical letters by the author, which have never till now been published.

While this book contains "The Owl and the Pussy-Cat" and other similar rhymes, it also contains nonsense stories in which such words as "pellucid," "sanguinary," "anti-congenial," "contemplation," "perpetual," and "pusillanimous" are used, words which a young child could not be expected to understand.

Exhibit 14 is a book somewhat similar to Exhibit 13. It contains the same introduction and preface as does Exhibit 13. One of the rhymes, "The Two Old Bachelors," contains such words as "promiscuous" and "convivial." The book is illustrated, but there are no illustrations of children. They consist of adults, animals and birds.

We hold that Exhibits 7, 8, 9, 11, 13, and 14 are not "books * * * for children's use" within the meaning of those words as used in said paragraph 1310, and the lower court properly sustained the protests as to the books represented by said exhibits.

For the reasons stated, the judgment of the United States Customs Court is modified, being reversed in so far as it relates to merchandise represented by Exhibits 1 to 6, inclusive, and Exhibits 10, 12, 15, and 16, and in all other respects affirmed.

The cause is remanded for proceedings consistent with the views herein expressed.